**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**BARBARA JONES and
JAMES JONES,**

    **Plaintiffs,**

**v.**               **Case No.:  3:14-cv-11531**

**BANK OF AMERICA, N.A.,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER**

   Pending before the Court is Plaintiffs' Motion to Compel. (ECF No. 24). Defendant has filed a response in opposition to the motion, (ECF No. 25), and Plaintiffs have replied. (ECF No. 27). Therefore, the issues have been fully briefed by the parties. After considering the arguments of counsel, the Court **GRANTS**, in part, and **DENIES**, in part, Plaintiffs' Motion to Compel as outlined below.

**I.**  **Relevant Background**

   This civil action involves allegations that the defendant Bank of America, N.A., ("BANA") improperly and illegally serviced Plaintiffs' home mortgage loan. Plaintiffs assert three causes of action, including one count of breach of contract and two counts of illegal debt collection. In summary, Plaintiffs claim that BANA agreed to a permanent loan modification in February 2013, and Plaintiffs fully complied with the terms of the agreement for six months. In October 2013, BANA notified Plaintiffs that it intended to cancel the modification and insisted that Plaintiffs sign a settlement

agreement acquiescing to the cancellation, or suffer the consequence of having their home mortgage loan placed in foreclosure. Plaintiffs were told that the cancellation was necessary because the owner of the loan, the Government National Mortgage Association ("Ginnie Mae"), would not agree to the modification. Plaintiffs contacted the Attorney General of the State of West Virginia and subsequently retained legal counsel to assist in resolving the issue. Over the ensuing two-month period, BANA allegedly unilaterally rescinded the modification and reinstated the original terms of the mortgage loan; sent statements to Plaintiffs with incorrect and inflated amounts due; reported Plaintiffs as being in arrears to credit agencies; continued communicating collection efforts directly with Plaintiffs even after being advised that Plaintiffs were represented by counsel; and while ultimately agreeing to a modification of the loan, showed incorrect balances and included improper charges in concurrent paperwork. Plaintiffs seek actual damages, civil monetary penalties, and attorney's fees and costs. (ECF No. 1-2).

Plaintiffs requested the production of certain documents during discovery and also scheduled and took a Rule 30(b)(6) deposition of BANA. Plaintiffs now complain that BANA has failed to provide all of the relevant materials requested and further failed to provide an adequately prepared corporate representative for deposition. They ask for an order compelling the production of additional documents and for a supplemental Rule 30(b)(6) deposition. In response, BANA argues that Plaintiffs' document requests are unduly burdensome and seek irrelevant or privileged information. With respect to the Rule 30(b)(6) witness, BANA denies that its witness was unprepared, but agrees that it will make another representative available for a supplemental deposition upon receipt of a "proper notice" from Plaintiffs.

## II.   <u>Relevant Law</u>

Federal Rule of Civil Procedure 26(b)(1) provides that:

Parties may obtain discovery regarding any matter, not privileged, that
is relevant to the claim or defense of any party, including the existence,
description, nature, custody, condition, and location of any books,
documents, or other tangible things and the identity and location of
persons having knowledge of any discoverable matter ... Relevant
information need not be admissible at the trial if the discovery appears
reasonably calculated to lead to the discovery of admissible evidence.

While the claims and defenses raised in the pleadings should be the focus of
discovery, broader discovery is permitted when justified by the particular needs of the
case. Fed. R. Civ. P. 26(b)(1), advisory committee notes (2000). In general,
information is relevant, and thus discoverable, if it '"bears on, or ... reasonably could
lead to other matter[s] that could bear on, any issue that is or may be in the case.
Although 'the pleadings are the starting point from which relevancy and discovery are
determined ... [r]elevancy is not limited by the exact issues identified in the
pleadings, the merits of the case, or the admissibility of discovered information.'"
*Kidwiler v. Progressive Paloverde Ins. Co.,* 192 F.R.D. 193, 199 (N.D.W.Va. 2000)
(internal citations omitted). In many cases, "the general subject matter of the
litigation governs the scope of relevant information for discovery purposes," *Id.* The
party resisting discovery, not the party seeking discovery, bears the burden of
persuasion. *See Kinetic Concepts, Inc. v. ConvaTec Inc.,* 268 F.R.D. 226, 243–44
(M.D.N.C. 2010)(citing *Wagner v. St. Paul Fire & Marine Ins. Co.,* 238 F.R.D. 418,
424–25 (N.D.W.Va. 2006)).

Simply because information is discoverable under Rule 26, however, "does not
mean that discovery must be had." *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D.
451, 453 (E.D.N.C. 2005) (citing *Nicholas v. Wyndham Int'l, Inc.,* 373 F.3d 537, 543

(4th Cir. 2004)). For good cause shown under Rule 26(c), the court may restrict or prohibit discovery when necessary to protect a person or party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). To succeed under the "good cause" standard of Rule 26(c), a party resisting discovery on the grounds of burdensomeness and oppression must do more to carry its burden than make conclusory and unsubstantiated allegations. *Convertino v. United States Department of Justice,* 565 F. Supp.2d 10, 14 (D.D.C. 2008) (the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery is overly broad, burdensome, and oppressive by submitting affidavits or other evidence revealing the nature of the burden); *Cory v. Aztec Steel Building, Inc.,* 225 F.R.D. 667, 672 (D. Kan. 2005) (the party opposing discovery on the ground of burdensomeness must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection); *Bank of Mongolia v. M & P Global Financial Services, Inc.,* 258 F.R.D. 514, 519 (S.D. Fla.2009) ("A party objecting must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome.").

In addition, Rule 26(b)(2)(C) requires the court, on motion or on its own, to limit the frequency and extent of discovery, when (1) "the discovery sought is unreasonably cumulative or duplicative;" (2) the discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (3) "the party seeking the discovery has already had ample opportunity to collect the requested information by discovery in the action;" or (4) "the burden or expense of

the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). This rule "cautions that all permissible discovery must be measured against the yardstick of proportionality." *Lynn v. Monarch Recovery Management, Inc.,* 285 F.R.D. 350, 355 (D.Md. 2012) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 523 (D.Md. 2010)). To insure that discovery is sufficient, yet reasonable, district courts have "substantial latitude to fashion protective orders." *Seattle Times Co. v. Rhinehar*t, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

In this case, BANA claims that some of the materials requested are not discoverable because they are privileged "or otherwise protected as proprietary information or trade secrets." (ECF No. 25 at 3). The rule governing attorney-client privilege in federal court is found at Fed. R. Evid. 501, which provides, *inter alia,* "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Here, the substantive claims and defenses are matters of state law; therefore, whether a particular document is privileged as an attorney-client communication will be determined under West Virginia law; "the burden of establishing the attorney-client privilege ... always rests upon the person asserting it." *State ex rel. U.S. Fid. and Guar. Co. v. Canady,* 460 S.E.2d 677, 684 (W.Va. 1995). Procedurally, when a party withholds information from discovery on the basis of attorney-client privilege or the work product protection, the party is required to produce contemporaneously with its discovery response a privilege log that satisfies the requirements of Fed. R. Civ. P. 26(b)(5). Failure to serve a compliant

privilege log may result in a waiver of the privilege. *See Mezu v. Morgan State Univ.,* 269 F.R.D. 565, 577 (D.Md. 2010) ("Absent consent of the adverse party, or a Court order, a privilege log (or other communication of sufficient information for the parties to be able to determine whether the privilege applies) must accompany a written response to a Rule 34 document production request, and a failure to do so may constitute a forfeiture of any claims of privilege.").

Federal Rule of Civil Procedure 26(c)(1)(G) allows the court, for good cause, to issue an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." In order for the court to apply the rule, two criteria must exist. First, the material sought to be protected must be "a trade secret or other confidential research, development, or commercial information." Second, there must be a "good cause" basis for granting the restriction. The party seeking protection bears the burden of establishing both the confidentiality of the material and the harm associated with its disclosure. *Deford v. Schmid Prods. Co.,* 120 F.R.D. 648, 653 (D.Md. 1987) (citing *Cipollone v. Liggett Group, Inc.,* 785 F.2d. 1108, 1121 (3rd Cir. 1986)). However, once these elements are demonstrated, the burden shifts to the party seeking disclosure to show that the material is relevant and necessary to its case. *Empire of Carolina, Inc. v. Mackle,* 108 F.R.D. 323, 326 (D.C. Fla. 1985). The court "must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled." *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 787 (3rd Cir. 1994) (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts,* 105 Harv.L.Rev. 427, 432–33 (1991).

### III.  <u>Discussion</u>

#### *A. Document Production*

Plaintiffs ask the Court to compel BANA to fully respond to thirteen requests for documents. Eight of the requests involve paperwork specific to the loan agreement at issue in this civil action, including email communications, the claim review file, documentation related to settlement agreements, correspondence, notes, and reports to the Single Family Default Management System. One additional request seeks a code sheet that will allow Plaintiffs to interpret some of the documents they already have in their possession. Two requests are for documents referenced in materials Plaintiffs received through discovery. Another request seeks BANA's guidelines, policies, and procedures related to loss mitigation, and various other topics, and the final request asks for handwritten notes prepared by BANA's 30(b)(6) witness prior to her deposition.

In its responsive memorandum, BANA states a litany of boilerplate objections. In BANA's view, the requests are unduly burdensome, overly broad, excessively expensive to answer, and seek irrelevant or privileged, protected, and proprietary materials. BANA additionally refers the Court to BANA's "full and complete" answers to discovery requests, which it "stands by." (ECF No. 25 at 6). Unfortunately, the full and complete answers are not much more than another litany of general boilerplate objections, many of which are stated twice; once in an introductory paragraph and once again after each discrete request. (ECF No. 25-1). BANA does produce documents, but it is impossible to determine whether any responsive documents were withheld based upon a privilege or protection because no privilege log was attached to the answers. Furthermore, the answers are so enmeshed in objections, it is

impossible to discern whether the responses are complete. BANA's answers to discovery requests provide a classic example of improperly-asserted boilerplate general objections.[1] Quite frankly, the undersigned is astounded and troubled that, even after appearing in many cases in this district and despite clear and established circuit case law holding that such objections are improper, counsel for Defendant persists in asserting a litany of insupportable general objections in response to discovery requests. *See, e.g., Mainstreet Collection, Inc. v. Kirklands, Inc.,* 270 F.R.D. 238, 240 (E.D.N.C. 2010) (mere recitation of the familiar litany that a request is overly broad, burdensome, oppressive, and irrelevant does not constitute a specific objection); *Hager v. Graham,* 267 F.R.D. 486, 492 (N.D.W.Va. 2010) ("general objections to discovery, without more, do not satisfy the burden of the responding party ... because they cannot be applied with sufficient specificity to enable courts to evaluate their merits."); *Mills v. East Gulf Coast Preparation Co., LLC,* 259 F.R.D. 118, 132 (S.D.W.Va. 2009) ("boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable."); *Mancia v. Mayflower Textile Services*

---

[1] For example, in answer to the question: Please identify all individuals who may have knowledge of the facts of this case, and provide each individual's name, contact information, and the facts of which they have knowledge, BANA responded, in relevant part:

> Defendant objects to the forgoing interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, the bank examiner privilege, or any other privilege, protection, or immunity applicable under governing law. Defendant further objects to the forgoing interrogatory as vague, ambiguous, overly broad, harassing, and unduly burdensome. Defendant also objects to this interrogatory on the basis that the same is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Then, without waiving these objections or the litany of General Objections set forth at the outset of the answers, BANA listed the Plaintiffs, a corporate representative of BANA, and anyone identified in the pleadings or in discovery. (ECF No. 24-1 at 7-8). BANA provided no privilege log and failed to summarize the facts known to the listed individuals. Clearly, there is nothing irrelevant, overly broad, harassing, burdensome, vague, ambiguous, or otherwise improper about an interrogatory asking for the names and contact information of potential witnesses and the facts which they possess. BANA's answer was entirely inadequate and improper.

*Co.,* 253 F.R.D. 354, 358-59 (D.Md. 2008) (court disapproves of a general objection asserted "to the extent" that it applies). By continuing to raise improper, non-particularized objections, counsel runs the risk of waiving any valid objections that may exist. *Id.* at 359; *see also Mezu v. Morgan State University,* 269 F.R.D. 565, 573 (D.Md. 2010).

With respect to BANA's objections based on burdensomeness and expense, the undersigned finds them to be without merit. It is BANA's obligation to support such objections with proof of the burden and expense. Yet, BANA fails to supply any evidentiary foundation for its contentions. Counsel argues that "BANA is a large corporation with countless pages of electronically stored information in its possession." (ECF No. 25 at 5). According to counsel, the "burden and cost" of locating and producing documents responsive to Plaintiffs' requests would clearly outweigh any potential benefits to be realized from their production. (*Id.*). However, counsel sheds no light on how she reached that conclusion. Most of the documents sought by Plaintiffs pertain to the loan agreement that gives rise to the allegations against BANA; accordingly, they are at least facially relevant. BANA supplies no information regarding its electronically stored information, such as the type and number of databases used to store ESI; the location and accessibility of the databases; the manner in which the information is stored, backed-up, and used; and the capability of the systems to perform searches. In fact, BANA submits no "detailed facts regarding the anticipated time and expense involved in responding to the discovery." *Cory v. Aztec Steel Bldg., Inc.,* 225 F.R.D. 667, 672 (D.Kan. 2005). In the absence of specific information demonstrating a genuine burden to BANA that can be weighed against the anticipated usefulness of the documents requested, BANA's

objections are not justified.

Similarly, BANA claims that looking for loan-related documents that it submitted to the Single Family Default Management System would involve searching for electronically stored information that is "not readily accessible" because of "undue burden or cost." (ECF No. 25 at 5). Once again, however, BANA provides no supporting affidavits or other corroborating information that lays out in detail the undue burden or cost. BANA does not explain how searching a dedicated computer database maintained by the federal government for a report pertaining to a specific loan would be difficult and expensive. To the contrary, many reporting databases have search mechanisms that make it easy to locate, review, and update reports stored in the system. Presumably, the Single Family Default Management System requires lenders such as BANA to file and update reports. Thus, there also presumably must be a way that the database can be readily accessed and searched for reports relative to particular loans. Nonetheless, BANA makes no effort to describe the system or explain why searching the system for reports made on Plaintiffs' loan would be unduly expensive and burdensome. BANA's failure to provide the requisite support for its objection renders the objection meritless.

BANA's objections based on privilege and work product protection are equally without basis given that BANA has—or soon will—waive its privilege objections by failing to provide Plaintiffs with a privilege log. Federal Rule of Civil Procedure 26(b)(5)(A) requires a party that withholds information based upon a privilege or protection to expressly make the claim and to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable

other parties to assess the claim." Courts have held that the failure to supply a privilege log as required by Rule 26(b)(5)(A) may result in a waiver of the objection. *Hake v. Carroll Cty, Md.,* Civil Case No. WDQ–13–1312 2014 WL 3974173, at *9 (D.Md. Aug. 14, 2014). "Failure to timely serve a duly signed privilege log meeting the requirements of Rule 26(b)(5)(A) shall be deemed a waiver of the protection otherwise claimed." *Rhodes v. Ingram,* No. 7:13–CV–192–BR 2015 WL 1038136, at *4 (E.D.N.C. Mar, 10, 2015). Although, BANA repeatedly asserted a privilege or work product protection objection in answers to discovery requests, it apparently never produced a privilege log. When responding to Plaintiffs' motion to compel, BANA once again claimed that various documents or classes of documents were protected as work product or by a privilege, yet never submitted a privilege log to the Court. Without a description of the documents, it is impossible for the Court or Plaintiffs to assess the propriety of the privilege/protection claims.

BANA also fails to substantiate its objection that certain materials are not discoverable because they are proprietary or are trade secrets. As the party resisting discovery, BANA has the burden of demonstrating the confidential nature of the business records sought by Plaintiffs, as well as the harm that is likely to occur if the records are produced in discovery. BANA has made absolutely no showing to meet either one of these burdens. Indeed, BANA's responsive memorandum suggests that no review of the requested materials has been undertaken to determine if they are, in fact, proprietary. (*See* ECF No. 25 at 4) (States that the requested documents "**may**" contain proprietary information and/or trade secrets ... that the documents, "***to the extent they exist***," ... are confidential, and/or contain proprietary information or trade secrets.).

BANA does specifically object on the basis of attorney-client privilege to the production of notes prepared by its Rule 30(b)(6) witness prior to deposition, although BANA does not supply a privilege log or provide the notes for *in camera* review. However, Plaintiffs indicate that the notes they seek do not pertain to conversations between the witness and her attorneys; rather, they are notes taken during conversations between the witness and other employees at BANA. (ECF No. 27 at 6). A review of the transcript reveals that during the deposition, Plaintiffs' counsel asked BANA's 30(b)(6) witness about handwritten notes, which she had brought to the deposition. The witness explained that she had met with three employees from BANA in preparation for her deposition and wrote some notes during the meetings. Plaintiffs' counsel asked questions regarding the substance of the conversations and about the notes that the witness had written. Counsel for BANA did not object to the questions, even though the witness expressed some discomfort with sharing the notes. (ECF No. 24-4 at 8). When no objections were made by counsel for Defendant, the witness read some of the notes into the record and then confirmed that the half sheet of paper she brought to the deposition constituted the entirety of her pre-deposition notes. (*Id.*). Considering that the notes do not reflect communications with counsel, are the subject of the witness' testimony, and were at least partially disclosed by being read into the record at the deposition, without objection, BANA's current opposition to their disclosure is both baffling and unavailing.

Finally, BANA objects to producing internal guidelines, policies, and procedures based on their lack of relevancy. Plaintiffs have requested policies, procedures, and guidelines pertaining to the Escalation Management Program, loss

mitigation, provision of settlement agreements, and audits of loss mitigation. Plaintiffs argue that the requests are limited in scope and relate to topics that are central to the case. Furthermore, they will show whether BANA complied with its own policies and whether it acted in good faith, or alternatively, acted unconscionably. However, the causes of action in Plaintiffs' complaint are well-defined and unrelated to BANA's policies, procedures, and guidelines. Plaintiffs' breach of contract claim will depend upon the terms of the contract, and the unconscionability claims are based upon specific contacts BANA allegedly had with Plaintiffs. Neither Plaintiffs, nor BANA, argue that BANA relies on any policy, procedure, or guideline as a defense. Therefore, the undersigned agrees with BANA that the policies, procedures, and guidelines are not relevant.

Therefore, within seven (7) days of today's date, Defendant BANA is **ORDERED** to provide full and complete responses to the requests set forth in paragraph 8, subsections a, b, c, d, e, f, g, h, i, j, k, and l of Plaintiffs' Motion to Compel. (ECF No. 24 at 2-3). Defendant is not required to produce policies, procedures and guidelines as requested in paragraph 8(m). BANA asks the Court to order Plaintiffs to reimburse BANA for the expense it will incur in collecting and producing the "many thousands of pages of mostly irrelevant documents" that Plaintiffs seek in discovery. The Court **DENIES** this request for several reasons. First, under the discovery rules, "the presumption is that the producing party should bear the cost of responding to properly initiated discovery requests." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 358, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). While a party may ask the Court to shift that burden under Rule 26(c), there must be good cause for a reallocation. Given that BANA has not articulated with any precision

the extent of the alleged burden it claims, BANA has entirely failed to demonstrate good cause. Second, BANA presents no evidentiary support for its statement that Plaintiffs' requests are likely to return thousands of pages of irrelevant information. Such a statement seems counterintuitive in light of the focused nature of the requests, most of which are tied directly to the loan agreement in question. Lastly, a great deal of the responsibility for BANA's current production obligation rests with BANA. BANA could have avoided some of the document collection and production costs if it had simply complied with the Rules of Civil Procedure. Instead of serving repetitive, boilerplate, general objections, BANA should have provided particularized answers and objections. Rather than raising a claim of potential privilege to documents that may or may not exist, BANA should have reviewed all responsive documents and provided a privilege log for those withheld on the basis of a privilege or protection. Accordingly, reallocating the cost of discovery is not reasonable or appropriate.

### B.  Rule 30(b)(6) Deposition

The parties have agreed to schedule a supplemental Rule 30(b)(6) deposition, and Plaintiffs issued a Notice of Deposition setting a date of April 29, 2015. Therefore, that portion of Plaintiffs' motion is moot. Plaintiffs also request that BANA be ordered to pay the costs incurred in taking a second deposition, arguing that BANA's failure to present a fully prepared witness at the first deposition necessitated the supplemental testimony. Plaintiffs did not raise the request for costs until their reply memorandum; accordingly, the issue is not properly before the Court. If Plaintiffs decide to seek reimbursement of expenses for the Rule 30(b)(6) deposition and for the costs and fees incurred in bringing the Motion to Compel, they are **ORDERED** to properly present the issues and provide the Court with an affidavit

itemizing the fees and expenses incurred in preparing the motion to compel and in completing the deposition, as well as any argument addressing the reasonableness of the requested award considering the factors contained in *Robinson v. Equifax Information Services, LLC,* 560 F.3d 235, 243-44 (4th Cir. 2009).

The Clerk is instructed to provide a copy of this Order to counsel of record.

**ENTERED:** April 21, 2015

Cheryl A. Eifert
United States Magistrate Judge